UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ROBERT MACK                          *        CIVIL ACTION NO.  3:11-cv-0735


VERSUS                               *        JUDGE ROBERT G. JAMES


WARDEN, LOUISIANA STATE              *        MAG. JUDGE KAREN L. HAYES
PENITENTIARY

## REPORT AND RECOMMENDATION

*Pro se* petitioner Robert Mack filed the instant petition for writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254 on May 16, 2011.  Petitioner is an inmate in the custody of

Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Louisiana

State Penitentiary, Angola.  Petitioner attacks his second degree murder conviction and the life

sentence imposed by the Thirty-Seventh Judicial District, Caldwell Parish.  This matter has been

referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C.

§ 636 and the standing orders of the Court.

## BACKGROUND

On December 3, 2003, the Caldwell Parish Grand Jury indicted petitioner on a charge of

second degree murder.  Thereafter, on January 19, 2007, he was found guilty as charged, and on

May 1, 2007, he was sentenced to life imprisonment.  Appellate counsel was appointed and in his

appeal raised a single assignment of error, sufficiency of the evidence, to the Louisiana Second

Circuit Court of Appeal.  *State of Louisiana v. Mack*, No. 43,206 (La. App. 2 Cir. 4/23/08); 981

So. 2d 185, 186-90.  Petitioner argued two *pro se* assignments of error: (1) violation of La. C. Cr.

P. art. 383 (concerning the sufficiency of the indictment) and (2) a violation of the rights to

1

compulsory process, due process and equal protection (concerning the fact that petitioner's alleged alibi "appeared at the courthouse under subpoena, but was turned away and sent home under the impression that she was not needed." *Id.* at 190-92.  The Second Circuit addressed the merits of the sufficiency of the evidence claim but affirmed the conviction on the grounds that the evidence was sufficient to establish second degree murder.  *Id.* at 190.  The court also ruled that both *pro se* assignments were procedurally defaulted because (1) there was no timely filed motion to quash the indictment as required by La. C. Cr. P. art. 535; and (2) petitioner did not contemporaneously object to the witness's absence as required by La. C. Cr. P. art. 841.  *Id.* at 191-92.

On June 6, 2008, petitioner sought further review in the Louisiana Supreme Court.  *See* Doc. # 15-4, pp. 130-50.  On February 20, 2009, his writ application was denied without comment.  *State of Louisiana ex rel. Robert E. Mack, Jr. vs. State of Louisiana*, 2008-1222 (La. 2/20/09); 1 So. 3d 491.

Petitioner then filed a *pro se* application for post-conviction relief in the Thirty-Seventh Judicial District Court on April 15, 2009, raising the same claims of ineffective assistance of counsel asserted herein.  [Doc. # 15-4, p. 153-71].  On January 7, 2010, the district court denied relief.  *Id.* at pp. 175-81. On February 12, 2010, petitioner sought review in the Second Circuit Court of Appeals.  [Doc. # 1, p. 8].  On March 17, 2010, the Court of Appeals denied relief. [Doc. # 9, p. 89].

Thereafter, on April 6, 2010, petitioner sought review in the Louisiana Supreme Court. [Doc. # 15-4, pp. 189-202].  That court denied relief on October 29, 2010.  *State of Louisiana v. Mack*, 2010-0766 (La. 10/29/10); 48 So. 3d 286.  Petitioner filed the instant petition on May 16, 2011.  He now argues the following claims of ineffective assistance of trial counsel based upon

2

counsel's (1) failure to investigate alibi witnesses and to object to the absence of subpoenaed

alibi witnesses at the time of trial; (2) failure to consider or investigate defendant's request to

plead not guilty by reason of insanity; and ineffective assistance of appellate counsel based on

counsel's (3) failure to argue the change of venue motion; (4) failure to argue mistrial after

witnesses made reference to prior crimes; and (5) failure to argue the *Batson* challenge regarding

discrimination in the jury selection process.  *See* Doc. # 1.

**LAW AND ANALYSIS**

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider habeas claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ─── U.S. ───, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000).  "The

'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's]

decisions as of the time of the relevant state-court decision." *Id.* at 740.  Under the

3

"unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A.    Ineffective Assistance of Trial Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004).

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence.  *Id.* at 693-94.

Here, petitioner has two complaints stemming from the alleged ineffective assistance of his counsel at trial.  Nowhere in his petition does he articulate precisely how the alleged errors of his attorney fell below an objective standard of reasonableness, or how petitioner was prejudiced as a result.  *See Strickland*, 466 U.S. at 686-87.  Nevertheless, the undersigned will consider each claim in turn.

### 1. Failure to investigate alibi witnesses and to object to the absence of subpoenaed alibi witnesses

First, petitioner alleges that his trial counsel erred by failing to investigate alibi witnesses and to object to the absence of subpoenaed alibi witnesses at the time of trial.  [Doc. # 1, p. 9]. Petitioner claims that one witness was subpoenaed but "turned away," presumably at the courthouse.  Petitioner further claims that the state's entire case rested on the testimony of a single eyewitness, Allen Perkins, and petitioner's inability to refute this testimony with alibi evidence prejudiced his case.  *Id.* at p. 10.  As noted by the Louisiana Second Circuit Court of Appeals, there was an extensive discussion during a hearing on a motion for new trial concerning the absence of witnesses Nicola Roy and Cynthia Roy.  The Second Circuit recounted the series of events at trial, in pertinent part, as follows:

> When defense witnesses Cynthia and Nicola Roy (defendant's wife and stepdaughter), did not appear to testify, there was a discussion between the state's attorney, defense counsel, and the judge. Apparently, Cynthia had been subpoenaed by the state, not the defense, and the state had never been able to locate her, although a tape recording of a statement by her had been made. The state offered to stipulate to the playing of the tape in Cynthia's absence. . . . However, the D.A. was not willing to stipulate as to what Nicola would testify "because it is very obvious that

she is very hostile, uh, toward someone. Uh, my understanding that she was really rude to [defense counsel] on the phone, that she said she wasn't coming and he could take a ____ leap."

Louis Scott, defendant's attorney, responded that Cynthia Roy was "of similar nature about coming to court. So, we really don't know what she would testify to if she came also, uh, even though she's on tape." After further discussion, the attorneys agreed to a stipulation that defense counsel subsequently put before the jury.

Thus, because of the hostility of these witnesses, defense counsel made a tactical decision to agree to a stipulation as to some or all of their expected testimony. The trial judge observed at the hearing on the new trial motion that he was "not at all certain, as [he] recall[ed] the facts and circumstances, that the Defense made a bad decision. They were trying to get a witness here that [had] already indicated to the Defense that they would be hostile." The undersigned agrees with the trial judge's assessment. A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). In the instant case, petitioner has failed to show that his attorney's decision to agree to a stipulation rendered the entire trial "obviously" unfair. Thus, the attorney's performance satisfies the standard of reasonableness set by *Strickland*, and this claim should be DENIED.

### 2. Failure to consider or investigate defendant's request to plead not guilty by reason of insanity

Petitioner also contends that his trial counsel was ineffective for failing to pursue his request to plead not guilty by reason of insanity. He points to a letter he sent to the trial court requesting to be examined by a physician and to change his plea to not guilty by reason of

insanity.[1]  He complains that there is no indication in the record that anyone, including his attorney, acted upon this request, and that his attorney's failure to consider it "was ineffective assistance of counsel per se."  [Doc. # 1, p. 11].

The undersigned is unable to find that the attorney's performance was deficient.  It is true that the letter sent by petitioner clearly requests an examination by a physician and a change of plea, and the record shows that petitioner's attorney was made aware of the letter.  *See* Trial Court Order, Doc. # 15-4, p. 229.  However, there is nothing in the record to show that petitioner's attorney failed to investigate his mental condition.

The Supreme Court has said that a defendant has the ultimate authority to make fundamental decisions for his case.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Court has listed four decisions which it characterizes as fundamental: whether to plead guilty, waive a jury, testify in his or her own behalf or to take an appeal.  *Id.*  Thus, the decision whether to plead not guilty or not guilty by reason of insanity is not a fundamental decision reserved solely to a defendant.  *See Spear v. Howerton*, No. CV405-179, 2008 WL 2811337 (S.D. Ga. Jul. 21, 2008) (rejecting ineffective assistance of counsel claim where attorney pursued insanity defense over defendant's objections).  Here, the attorney obviously made a tactical decision to present the defense that the petitioner was not at the scene of the crime rather than the affirmative defense of insanity.  This decision was reasonable under the circumstances; thus, the attorney's performance satisfies the first prong of the *Strickland* standard.

The undersigned is similarly unable to find that the attorney's performance prejudiced petitioner in any way.  Regardless of whether the attorney investigated petitioner's mental state at

---

[1] A copy of the letter was attached to petitioner's supplemental post-conviction application.  *See* Doc. # 15-4, pp. 221-22.

the time of the murder, there is no reasonable probability that an insanity defense would have resulted in petitioner's acquittal.  Petitioner has made no showing in state post-conviction proceedings or elsewhere that he was suffering from mental disease or deficiency at the time of the act.  Indeed, there is no evidence in the record that a defense of insanity would have any possibility of success.  Therefore, petitioner was not prejudiced by his attorney's failure to investigate the insanity defense, and petitioner's second claim for ineffective assistance of trial counsel should be DENIED.

### B.      Ineffective Assistance of Appellate Counsel

#### 1.  Failure to argue the change of venue motion

Petitioner first argues that his appellate counsel was ineffective for failing to argue the denial of a motion to change venue.  Again, there exists a strong presumption that counsel's actions are reasonable.  *See Strickland*, 466 U.S. at 689.  Appellate counsel "need not, and should not, raise every nonfrivolous claim, but rather should 'winnow out weaker arguments' to maximize the likelihood of success on appeal." *Kossie v. Thaler*, 423 Fed App'x 434, 437 (5th Cir. 2011) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  In *Robbins*, the Supreme Court endorsed the Seventh Circuit's standard that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

In the instant case, any argument on appeal concerning the motion to change venue would have been meritless.  Under Louisiana law, a change of venue shall be granted "when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any reason, a fair and impartial trial cannot be obtained in the parish where

the prosecution is pending." La. C. Cr. P. Art. 622. Generally, the defendant bears the burden of showing actual prejudice. *State v. Lee*, 05–2098 (La. 1/16/08); 976 So.2d 109, 132, *cert. denied*, 555 U.S. 824 (2008). Furthermore, the defendant "must prove more than mere general public knowledge or familiarity with the facts of the case to have her trial moved to another parish." *Id.* at 133. Rather, the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial. *State v. Clark*, 02-1463 (La. 6/27/03); 851 So. 2d 1055, 1071, *cert. denied*, 540 U.S. 1190 (2008).

Here, trial counsel filed a motion for change of venue[2] based on a newspaper article published in a local paper in Caldwell Parish. *See* State Court Record, Doc. # 15 ["R."], p. 33. The headline to the article read, "Black man shot and killed White man." *Id.* Petitioner argues that "the racial bias of this article, combined with the inability to seat black jurors on this case, warranted a change of venue." [Doc. # 1, p. 12]. He claims that appellate counsel's failure to argue this issue on appeal constituted ineffective assistance.

However, petitioner fails to meet his burden of showing that the attorney's failure to raise the issue was objectively unreasonable. First of all, the crime occurred in the fall of 2003, so it is reasonable to assume that the newspaper article was published around the same time. However, the trial did not take place until early 2007, over three years later. Any significant prejudice toward petitioner that might have existed at the time of the crime would likely have dissipated by the time of trial, at least in part. Furthermore, a review of the *voir dire* transcript indicates that only a handful of prospective jurors were familiar with the facts of the case, and as far as the

---

[2] The record indicates that petitioner initially filed the motion himself; as a result, a hearing took place to determine if petitioner would proceed pro se. At this hearing, petitioner chose to have appointed counsel represent him, and his attorney adopted the motion. *See* Order, Doc. # 15-4, p. 223.

undersigned can tell, only one of these persons was eventually selected to the jury.  *See* R. pp.
151, 262, 313.

Thus, petitioner has failed to demonstrate the "extent of prejudice in the minds of the
community as a result of [exposure] to the case." *See Clark*, 851 So. 2d at 1071.  One reference
to a three-year-old newspaper article containing an inflammatory headline is simply not enough
to establish actual prejudice.  Accordingly, it would have been futile to claim on appeal that the
trial court abused its discretion in finding that a fair and impartial trial could be obtained in
Caldwell Parish, and petitioner's first claim of ineffective assistance of appellate counsel should
be DENIED.

### 2. Failure to argue the motion for a mistrial

Petitioner next claims that his appellate counsel was ineffective for failing to appeal the
denial of a motion for mistrial. The motion was made by petitioner's trial counsel in response to
two statements made by witnesses for the State on cross-examination.  The first statement was a
police officer's response to a question by the defense concerning information given by an
eyewitness to the crime.  The officer responded that the eyewitness claimed the defendant told
the victim that he did not want to fight because he was on probation.  R. p. 396-97.  The second
statement was a detective's response to a question concerning how he knew the defendant.  The
response was that he had gone to the defendant's house to execute a Richland Parish arrest
warrant for a burglary charge.  R. p. 407.  Petitioner's attorney moved for a mistrial on the basis
that these two statements introduced impermissible "other crimes" evidence, and the trial court
denied the motion.  *See* R. p. 408-09.

Citing La. C. Evid. art. 404(B)(1), petitioner now argues that the State should have
provided notice before trial of their intention to introduce the testimony, and that their failure to

do so rendered the evidence inadmissible.  He further claims that the introduction of the testimony was "highly prejudicial to his case and may have impacted the jury verdict." According to petitioner, his appellate counsel's failure to raise this issue on appeal constituted ineffective assistance.

Preliminarily, it should be noted that petitioner's trial counsel did not object to the denial of his motion for mistrial.  Therefore, under La. C. Cr. Pr. art. 841, petitioner waived any right to raise the issue of the improper statements on appeal.  *See* La. C. Cr. P. Art. 841 (providing that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence); *see also State v. Fazande*, 05-901 (La. App. 5 Cir. 3/28/06); 927 So. 2d 507, 512 (finding that because defendant failed to object to denial of mistrial motion based on judge's improper comments, he failed to preserve the issue on appeal); *State v. Ratcliff*, 98-101 (La. App. 5 Cir. 2/23/99); 731 So. 2d 356, 364 ("Defendant did not object to the trial judge's denial of the motion for mistrial and, therefore, this issue cannot now be complained about.").

Furthermore, even if petitioner had preserved his objection to the denial of the motion, the claim would have lacked merit.  As noted above, it was the defendant who elicited the testimony that was the subject of the motion.  Thus, as it was not the State that introduced this evidence, La. C. Evid. art. 404(B)(1) is inapplicable, and no notice was required of the State.  In addition, the court admonished the jury to not consider the testimony regarding the Richland Parish warrant.  R. p. 484.  Finally, the court allowed the defense to conduct further questioning of the police officer concerning whether the defendant was on probation or parole at the time of the incident.  R. p. 486-87.  Considering the foregoing, any claim by petitioner's appellate attorney that the trial court erred in denying the motion for mistrial would have been meritless. Therefore, petitioner's second claim for ineffective assistance of appellate counsel should be

DENIED.

### 3. Failure to argue the *Batson* challenge

Finally, petitioner claims that his appellate counsel failed to argue a claim that the State improperly used its peremptory challenges in violation of *Batson v. Kentucky*, 106 S. Ct. 1712 (1986).  In *Batson*, The Supreme Court held that a defendant can establish an equal protection violation based on the government's use of peremptory challenges to remove African American veniremen from the jury in his case.  *Batson*, 106 S. Ct. at 1723. The *Batson* decision is codified in Louisiana law at La. C. Cr. P. Art. 795.  *See State v. Bess*, 45,358 (La. App. 2d Cir. 8/11/10); 47 So. 3d 524.  The Louisiana Supreme Court has explained the review of a Batson claim:

> A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (Citations omitted.)

*State v. Draughn*, 2005–1825 (La. 01/17/07); 950 So. 2d 583, *cert. denied*, 522 U.S. 1012, 128 S. Ct. 537, 169 L. Ed. 2d 377 (2007).

Here, petitioner's trial counsel objected after the state used its peremptory challenges to exclude two African American prospective jurors during voir dire.  As for the first of these prospective jurors, LaTanya Tatum, the record indicates that the State initially challenged her for cause.  However, the court denied the challenge, and the State used a peremptory challenge to excuse Ms. Tatum.  The record further reflects that the State excused Ms. Monica Johnson by

using another peremptory challenge.  The petitioner complains that the exclusion of these jurors presented a prima facie case for a *Batson* claim, and the burden should have shifted to the State to provide a race-neutral reason for the exclusions.  Petitioner claims that since this burden-shifting did not occur, it was error for his appellate counsel to fail to raise this claim on appeal.

However, the undersigned finds that any claim that the trial court erred in denying the *Batson* challenge would have been meritless, because petitioner failed to establish a *prima facie* case of purposeful discrimination.  To establish a *prima facie* case, the defendant must show: (1) the prosecutor's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venireperson on account of his being a member of that cognizable group.  *Batson*, 106 S. Ct. at 1723.  Without an inference that the prospective jurors were stricken because they are members of the targeted group, the defendant is unable to make a *prima facie* case of purposeful discrimination and his *Batson* challenge expires at the threshold.  *State v. Sparks*, 88–0017 (La. 5/11/11); 68 So. 3d 435, 468–69.

In this case, after the State excused Ms. Tatum and Ms. Johnson using peremptory challenges, no objection was made by defense counsel.  In fact, on the same panel as Ms. Tatum and Ms. Johnson was a man named Mr. Kenny Eggins, who is also an African American.  The State accepted Mr. Eggins as a juror.  It was only after Mr. Eggins had to be excused due to a personal matter that defense counsel complained that the jury lacked any African American members.  *See* R. p. 247.  The court then observed that the matter had been discussed during a side-bar conference, and that the State had expressed adequate grounds to justify the challenges. The court denied the *Batson* challenge.  *Id.*

Therefore, the only evidence of purposeful discrimination presented by petitioner is that

13

the State used two of its twelve allowed peremptory challenges to excuse African American

prospective jurors.  This is simply not enough to establish an inference that Ms. Tatum and Ms.

Johnson were stricken because they were African Americans.  Moreover, even if the burden had

shifted, it appears that the State satisfied the trial court that their reasons for the challenges were

race-neutral.

Accordingly, the undersigned cannot find that a claim by appellate counsel that the trial

court erred in this regard would have been successful, and petitioner's final ineffective assistance

claim should be DENIED.

**III.**    **Evidentiary Hearing**

Under Rule 8(a) of the *habeas* Court Rules, "the judge must review the answer [and] any

transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is

warranted."  28 U.S.C. § 2254, Rules Governing § 2254 Cases, Rule 8(a).  Section 2254(e)(2)

delineates the narrow circumstances under which an evidentiary hearing may be held in federal

court:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by
> the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the
> exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for the constitutional error, no reasonable fact-finder
> would have found the applicant guilty of the underlying offense.

14

28 U.S.C. § 2254(e)(2).

The Supreme Court recently held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also McCamey v. Epps*, 658 F.3d 491, 496-97 (5th Cir. 2011) (holding that in light of *Pinholster*, the district court erred in allowing an evidentiary hearing; "the district court's review should have been . . . confined to the record in the state court"). Nevertheless, the Court explained in *Pinholster* that its ruling did not render § 2254(e)(2) superfluous. "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief . . . . [Section] 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Pinholster*, 131 S. Ct. at 1401.

Petitioner's claims were all adjudicated on the merits in state court. Thus, an evidentiary hearing is unavailable, as the undersigned's review under § 2254(d)(1) is limited to the record before the state court.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by petitioner Robert Mack [doc. # 1] should be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of January, 2012.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE